UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60288-CR-COHN-SELTZER

UNITED STATES OF AMERICA,

vs.

CASSIO SLOWDEN,

        Defendant.

_____/

### REPORT AND RECOMMENDATION ON DEFENDANT CASSIO SLOWDEN'S MOTION TO DISMISS INDICTMENT (DE 59), CORRECTED MOTION TO DISMISS INDICTMENT (DE 60), AND SECOND MOTION TO DISMISS INDICTMENT (DE 76)

THIS CAUSE is before the Court on Defendant Cassio Slowden's Motion to Dismiss Indictment (DE 59), Corrected Motion to Dismiss Indictment (DE 60), and Second Motion to Dismiss Indictment (DE 76), and were referred to United States Magistrate Judge Barry S. Seltzer pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida (DE 63, DE 64, and DE 77). For the reasons set forth below, the undersigned RECOMMENDS that each motion be DENIED.

I.    PROCEDURAL HISTORY

On November 29, 2011, Defendants Cassio Orville Donald Slowden, Sean Anthony Lawrence, Omar Danladi Hyman, and Mario D. Archer were arrested at an undercover facility as they planned the robbery of a (purported) cocaine stash house. The following day, November 30, 2011, they were charged by way of a Criminal Complaint with conspiracy to obstruct commerce by robbery, in violation of 18 U.S.C. § 1951, conspiracy and attempt to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841, 846, and using firearms to further and during the commission

of a crime of violence and a drug trafficking offense and conspiracy to do the same, in violation of 18 U.S.C. §§ 924(c), 924 (o). And on December 8, 2011, a federal Grand Jury returned an Indictment charging Slowden, Lawrence, Hyman, and Archer with the following offenses: conspiracy to obstruct commerce by robbery, in violation of 18 U.S.C. § 1951 (Count 1); conspiracy and attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Counts 2 and 3); conspiracy to use and carry a firearm during the commission of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count 4); and using and carrying a firearm during the commission of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(Count 5).

On January 27, 2012, Defendant Slowden filed a Motion to Dismiss Indictment (DE 59) and a Corrected Motion to Dismiss Indictment (DE 60), and on February 6, 2012, Defendant Slowden filed a Second Motion to Dismiss Indictment (DE 76). Given the asserted bases for these motions, the undersigned is able to decide the matter without the benefit of a Government response.

II.   BACKGROUND

Defendant Slowden's Motion to Dismiss and Corrected Motion to Dismiss both set forth the facts that gave rise to the Indictment. According to Slowden:

> [I]n October 2011, S/A Adrian Halley ("Halley"), from the Bureau of Alcohol, Tobacco, and Explosives ("ATF"), and another AFT agent, Steve McKean ("McKean"), interviewed a confidential informant ("CI"). The CI told the agents that he had met with someone known as "Richie" who wanted to sell several pounds of marijuana. Richie later was identified as SLOWDEN, and the marijuana purportedly came from a robbery. The CI told SLOWDEN he might know someone who needed a "crew" to do an armed robbery, and allegedly

SLOWDEN was interested in participating in such a crime. The agents had the CI call SLOWDEN who said he would like to meet with the CI and his contact.

As the investigation progressed the agents made recordings of telephone conversations and undercover meetings. On November 1, 2011, McKean, in an undercover capacity ("UC"), met with the CI, SLOWDEN, and Blake DeAngelo ("DeAngelo"), and an unidentified male at a restaurant. The UC explained he was a disgruntled narcotics courier looking to rob about fifteen kilograms of cocaine from a stash house protected by at least one armed guard. The drug traffickers the UC worked for employed him to transport a couple of kilograms of cocaine every month. The UC would give out the address to the stash house only on the day of his scheduled drug pick-up because he wouldn't know it until that time. The UC wanted five kilograms of cocaine as payment for setting up the robbery.

On November 9, 2011, at a Starbuck's coffee shop, the UC met with the CI, SLOWDEN and DeAngelo to continue talking about the possibility of committing the robbery to steal cocaine. DeAngelo got there late and, consequently, he did not participate in the whole meeting. SLOWDEN described to the UC how he would commit the robbery, hide the UC's involvement, and take jewelry and cell phones from stash house guards. SLOWDEN agreed to meet with the UC again to talk further about this robbery.

On November 23, 2011, the UC met with SLOWDEN at a Home Depot. The UC told SLOWDEN a load of cocaine was expected to arrive next week. SLOWDEN said he was ready to commit the robbery and would be able to obtain three firearms. He promised the UC he would not be harmed and would be paid his share of the stolen cocaine. SLOWDEN said whether the stash house guards would be harmed depended what happened during the robbery. SLOWDEN would be armed with a "long gun" when he entered the stash house.

On November 28, 2011, the UC recorded a call he made to SLOWDEN to advise a shipment of cocaine would arrive the next day. SLOWDEN told the UC he was to get the "paint brushes," allegedly code for firearms. On November 29, 2011, SLOWDEN met with the UC at an undercover facility and

3

>   brought along three individuals[1] he said were "new soldiers" to help him do the robbery. The UC had convinced SLOWDEN to come to the undercover facility to wait for a phone call the UC would receive with the address of the stash house.
>
>   The UC gave the three new individuals the same information about the plan to steal the cocaine he had give[n] to SLOWDEN at the beginning of this investigation: a) the UC was a disgruntled narcotics courier who needed help to steal fifteen kilograms of cocaine from a stash house; b) at least one armed guard from a drug-trafficking organization protected the cocaine there; c) the drug traffickers used the UC to transport one or two kilograms of cocaine monthly; d) the drug traffickers used different locations for stash houses as a safety measure; e) the drug traffickers would call the UC and provide him the address to the stash house the day the drugs were ready for pick-up; and f) the UC wanted five kilograms as payment for his involvement. After looking around the undercover warehouse for items they could use to commit the robbery, the Defendants were arrested.

Motion and Corrected Motion at 2-4 (DE 59, 60).

Defendant Slowden's rendition of the facts is largely consistent with those found by United States Magistrate Judge Lurana Snow following a hearing upon the Government's request for pretrial detention. Judge Snow's findings, however, include certain aggravating factors that were omitted from Defendant Slowden's account, including Slowden's statements that it might be necessary to kill the guards and burn down the stash house and that each of the defendants was carrying a pistol for use during the robbery. Defendant Slowden's account also omitted any mention that the agents had recovered from the four defendants the following items intended for use in the robbery: four loaded handguns, surgical gloves, cloth gloves, knit caps and a knife. See Detentions Orders (DE 26, 27, 28,

---

[1] These three individuals are the other Defendants in this case, Sean Anthony Lawrence ("Lawrence"), Omar Danladi Hyman ("Hyman"), and Mario D. Archer ("Archer").

4

29).

III. <u>DEFENDANT SLOWDEN'S MOTIONS TO DISMISS</u>

In all three motions, Defendant Slowden argues that the Indictment should be dismissed as the prosecution violates his substantive due process rights under the Fifth Amendment to the United States Constitution. <u>See</u> Motions at 1 (DE 59, 60, 76). More specifically, in his Motion to Dismiss and Corrected Motion to Dismiss (DE 59, 60), Defendant Slowden argues that the "reverse sting" employed by law enforcement agents "offend[ed] traditional notions of justice and fair play." <u>Id.</u> at 7.[2] And in his Second Motion to Dismiss (DE 76), Defendant Slowden argues that the Indictment should be dismissed on account of two other due process violations: "sentencing entrapment and sentencing manipulation." Second Motion at 2 (DE 76). Slowden explains that the Government "create[d] the entire scenario of the crimes it later charge[d], including inventing a fictitious drug type and quantity and whether firearms should be carried and perhaps used." Second Motion at 2 (DE 76). For the reasons set forth below, the undersigned does not agree.

A. <u>Timing of Court's Ruling</u>

Defendant brings his Motion to Dismiss and Corrected Motion to Dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(2),(3), asserting that they are "in the nature of an objection to his prosecution" and "an allegation of a defect in its institution." Motions

---

[2] Defendant Slowden explains that the alleged substantive due process violation can be described as a prosecution where the Government "has exceeded the outer bounds of constitutionally-conforming law enforcement activity." Second Motion at 1 n.1 (DE 76). The undersigned, therefore, construes Slowden's argument that the Government's sting offends notions of fair play and justice as analogous to an "outrageous government conduct" argument.

at 1 (DE 59, 60).[3] Federal Rule of Criminal Procedure 12(b)(2) is permissive, providing that "[a] party _may_ raise by pretrial motion any . . . objection . . . that the court can determine without a trial of the general issue." (emphasis added.) "The 'general issue' has been defined to mean evidence relevant to the question of guilt or innocence." See United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987) (citation omitted). By contrast, Federal Rule of Criminal Procedure 12(b)(3)(A) is mandatory, stating that a party "_must_ . . . raise[] before trial . . . a motion alleging a defect in instituting the prosecution." (emphasis added.) Several courts have held that a defense of outrageous government conduct is directed to the institution of the prosecution and, accordingly, must be raised before trial or be waived. See United States v. Mausali, 590 F.3d 1077, 1081 (9th Cir. 2010) ("The Second, Third, and Eighth Circuits require a defendant to assert outrageous government conduct of which he is aware before trial, pursuant to Fed.R.Crim.P. 12(b).") (citations omitted). And the Eleventh Circuit, by implication, has similarly indicated that a defendant's failure to raise an outrageous government conduct challenge before trial could result in a waiver of the objection. See United States v. Augustin, 661 F.3d 1105, 1122 n. 10 (11th Cir. 2011) (recognizing that non-jurisdictional arguments alleging defect in instituting prosecution are waived unless raised pretrial but nonetheless granting plain error review on appeal of outrageous government conduct issue, even if challenge had not been raised at trial); United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998) (stating on appeal that "neither [defendant] dispute[s] that they failed to seek dismissal of the indictment in the district court on the ground of outrageous governmental conduct, and

---

[3] Defendant Slowden does not identify any Rule of Procedure in his Second Motion to Dismiss (DE 76).

their appeal of this issue is therefore barred").

Yet, the requirement that a defendant raise an objection pretrial does not translate into a requirement that the court decide the objection pretrial. See, e.g. United States v. Kaplan, 554 F.2d 958, 970 n.7 (9th Cir. 1977) (although certain motions to dismiss must be made before trial or are waived, trial court may defer determination of motion). Indeed, although Federal Rule of Criminal Procedure 12(d) states that "[t]he court must decide every pretrial motion before trial," it plainly allows the court to defer a ruling upon a finding of "good cause." "Good cause" for deferral exists if facts at trial will be relevant to the court's decision. United States v. Adkinson, 135 F.3d 1363, 1369 n.11 (11th Cir. 1998); accord Ayarza-Garcia, 819 F.2d at 1048 (when question of federal subject-matter jurisdiction is intermeshed with questions going to merits, issue should be determined at trial rather than on pretrial motion to dismiss). Hence, the propriety of deciding a motion to dismiss at the pretrial stage is contingent upon whether the alleged infirmity in the prosecution is essentially one of law or involves a determination of facts; if only a question of law is involved, then a decision on the motion before trial is generally proper. See United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987); United States v. Korn, 557 F.2d 1089, 1090 (5th Cir. 1977);[4] United States v. Miller, 491 F.2d 638 (5th Cir. 1974). But where the motion raises questions of fact intertwined with issues involving the merits, determination of the matter is better deferred until trial. United States v. Shober, 489 F. Supp. 393, 403 (E.D. Pa. 1979); United States v. Fargas, 267 F. Supp. 452, 455 (S.D.N.Y.

---

[4] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

1967)

B. Defendant Slowden's Due Process Objections

Defendant Slowden has raised three due process objections: violation of traditional notions of justice and fair play (which the undersigned construes as a variation of the "outrageous government conduct" objection), sentence manipulation, and sentence entrapment. The Eleventh Circuit has defined each term:

> Outrageous government conduct is a defense that focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition. Sentence manipulation focuses on the government's conduct and requires courts to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, or due process claim, must sometimes be filtered out of the sentencing calculus. Finally, sentence entrapment is the claim that a defendant, although predisposed to commit a minor or lessor offense, is entrapped into committing a greater offense subject to greater punishment.

United States v. Paisley, 178 Fed. App'x 955, 961 n.2 (11th Cir. 2006) (quotations and citations omitted).

1. First Objection: Violation of Traditional Notions of Justice and Fair Play

Slowden argues that the "reverse sting" in this case offends traditional notions of justice and fair play, rising to the level of a substantive due process violation and requiring dismissal of the Indictment. Motion at 7 (DE 59, 60). Slowden attributes the due process violation to the Government's contravention of a law enforcement Mission Statement. Id. at 5. According to Slowden, a joint (federal-state) task force contravened its Mission Statement – to take criminals off the street who are currently engaged in committing violent crimes – when it employed a reverse-sting to target, arrest, and prosecute him; Slowden

contends that at the time he was not engaged in such activities. Id. at 4-5 (asserting that he was targeted "at a time when he was not involved in any criminal activity falling within the limits of the Mission Statement"). According to Slowden, when the Government learned what was doing in his life – "nineteen-years-old when this investigation began with no criminal record or other information to justify him being targeted as a violent robbery suspect" – "it should have discontinued its investigation and never have brought this prosecution against him." Id. at 5 and n.3.

Were the contravention of a task force Mission Statement a cognizable constitutional violation warranting dismissal of an indictment, the Court would have the discretion (under the "good cause" provision of Rule 12(d)) to defer ruling on the Motions until evidence of Slowden's criminal activity were presented at trial. And in that event, the Government would have the opportunity at trial to present the evidence of Slowden's criminality, as set forth in the Complaint Affidavit:

- a reliable confidential informant ("CI") had advised law enforcement that Slowden was attempting to unload approximately three pounds of marijuana from a previous robbery;[5]

- the same CI had advised law enforcement that Slowden expressed an interest in meeting the CI's contact who was seeking a crew to commit an armed robbery;

- during his first meeting with the undercover ("UC") agent, Slowden expressed his

---

[5] To the extent Defendant is suggesting that that Government violated his constitutional rights by making him the subject of its investigation, the Eleventh Circuit has rejected the notion that it is impermissible for the Government to select a subject upon whom its informant would concentrate after that informant had provided information that the subject is involved with drugs. See United States v. Edenfield, 995 F.2d 197 (11th Cir. 1993).

9

interest in arming himself to rob a stash house of 15 kilograms of cocaine and possibly killing the guards and, further, informed the UC of a robbery he had committed with a firearm to steal drugs from a dealer;

- during his second meeting with the UC, Slowden stated that he would also steal the jewelry and cellular phones of the stash house occupants to help conceal the UC's involvement, that if the armed guard resisted he would have to "pop him," and that if someone died during the robbery he would have to burn the stash house;

- during his third meeting with the UC, Slowden reiterated his readiness to commit the robbery, that he had called his source of firearms, that his source had three firearms available, that the safety of the guards would depend upon their actions during the robbery, that he would be the first person entering the stash house, and that he would be carrying a long gun;

- during a subsequent telephone call, Slowden told the UC he was in the process of obtaining the firearms;

- during the final meeting, Slowden brought three "new soldiers" – Hyman, Lawrence, and Archer – to help him commit the robbery and told the UC that they had brought pistols to use during the robbery; and

- following the arrest of the four suspects, law enforcement recovered four loaded firearms, surgical gloves, cloth gloves, knit caps, and a knife, in addition to plastic ties the defendants planned to use as plastic handcuffs to bind the stash house guards.

Complaint Affidavit at 1-6 (DE 1). Slowden would then have the opportunity to present evidence showing that he was a law abiding 19 year-old, with respect to whom the task

force had no basis "to justify him being targeted as a violent robbery suspect."

The Court, however, need not defer ruling on Slowden's objection. Slowden has not presented – nor is the undersigned aware of – any legal authority suggesting that a contravention of a task force Mission Statement rises to the level of a Fifth Amendment Due Process violation. Moreover, in his own Motion and Corrected Motion, Slowden has set forth the material facts of the reverse sting, and he has expressly acknowledged that "there is binding precedent, as well as non-binding persuasive authority, in the Eleventh Circuit *adverse* to his position." that the reverse sting violates due process. See Corrected Motion at 8 n.5 (DE 60) (italics in original). Slowden, however, asks that the Court create an exception based upon the particular facts of this case or, alternatively, that Eleventh Circuit precedent "be modified to prohibit this class of reverse sting whenever information available to the Government demonstrates continued prosecution of a particular case would violate the Mission Statement." Id. The undersigned is bound to faithfully apply the law of this Circuit and does not find any basis for excepting Slowden from the application of that law.

The law in this Circuit is clear. The reverse sting that gave rise to Slowden's prosecution is in all material respects the same reverse sting that has given rise to many other prosecutions that have been approved by the Eleventh Circuit against arguments of outrageous government conduct. By way of example only, in United States v. Sanchez, 138 F.3d 1410 (11th Cir. 1998), the appellate court rejected the argument that an almost identical reverse sting, in which the Government had created a fictitious crime for the defendants to commit – robbery of a non-existent house allegedly stocked with large quantities of cocaine and marijuana, which did not in fact exist – was so outrageous as to

11

warrant dismissal of the indictment. While recognizing that it is possible that Government involvement in a criminal scheme might become so pervasive that it would violate the constitution, "that standard has not yet been met in any case either before the Supreme Court or [the Eleventh Circuit Court of Appeals]." Id. at 1413. The Sanchez Court added: "Moreover, challenges to the 'reverse sting' method of police investigation have been rejected by this Court on numerous occasions." Id. (citing cases). The Eleventh Circuit has not deviated from that view, recently reiterating that the defense of outrageous government conduct can be successfully invoked only in the rarest and most outrageous cases, that is, where the conduct is shocking to the universal sense of justice. United States v. Augustin, 661 F.3d 1105, 1122 (11th Cir. 2011) (quotations and citations omitted). The Augustin Court made clear that the challenged investigation in that case comported with the basic requirements of due process, as the Government had not run an entire operation with only meager assistance from the defendants, but rather had provided only the means to those who were willing and predisposed. Id.

    2.    Second and Third Objections: Sentencing Entrapment and Sentencing Manipulation

The Eleventh Circuit has also previously addressed claims of sentencing entrapment and sentencing manipulation. In succinct and unambiguous language, the Eleventh Circuit has stated that the claim of sentencing entrapment "must fail as a matter of law because this Circuit has rejected sentence entrapment as a viable defense." Sanchez, 138 F.3d at 1414 (citing United States v. Miller, 71 F.3d 813 (11th Cir.), cert. denied, 519 U.S. 842 (1996)); accord United States v. Edenfield, 995 F.2d 197, 200 (11th Cir. 1993).

12

The Eleventh Circuit, however, has drawn a distinction between the viability of a sentencing entrapment defense and the viability of a sentencing manipulation defense: "While our Circuit does not recognize sentencing entrapment as a viable defense, . . . we have considered sentencing manipulation as a viable defense." United States v. Ciskowski, 492 F.3d 1264, 1270 (11th Cir. 2007) (citing Sanchez, 138 F.3d at 1413-14). Distinct from an outrageous government conduct objection, which may be grounds for dismissing an indictment or reversing a defendant's conviction, "sentencing factor manipulation would simply reduce the sentence applied to [a defendant's] conduct."[6] Ciskowski, 492 F.3d at 1270. But "[t]he standard for sentencing factor manipulation is high," and the defendant has the "burden of establishing that the government's conduct is sufficiently reprehensible to constitute sentencing factor manipulation." Id. at 1271. "Therefore, to bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary conduct." Id. The Eleventh Circuit, however, has made clear that "[g]overment-created reverse sting operations are recognized and useful methods of law enforcement investigation," even where the operation provides a willing offender with guns and drugs, and in such contexts it has declined to find that the government engaged in prohibited sentencing factor manipulation. Id. (citing, inter alia, cases approving government's selection of age of "minor" victim, which resulted in guideline enhancement, and approving government's purchase of crack cocaine rather than powder cocaine, which resulted in sentencing differential). Significantly, in reverse

---

[6] A motion to dismiss the indictment, therefore, would not be an appropriate vehicle through which to raise a meritorious sentencing manipulation defense. Nonetheless, the undersigned concludes that Eleventh Circuit law does not support a sentencing manipulation defense in this case.

sting scenarios almost identical to that charged here, the Eleventh Circuit has held that a government informant's or agent's selection of a fictitious quantity of drugs to be stolen by the defendants is not an impermissible manipulation of the quantity. See United States v. Daniels, 345 Fed. App'x 514, 523 (11th Cir. 2009) ("[Defendant] has failed to show that ATF agents engaged in sentencing factor manipulation simply by stating that the two men guarding the stash house would be armed or informing the defendants that the stash house contained at least 15 kilograms of cocaine."); Sanchez, 138 F.3d at 1414 ("The fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative conduct warranting a downward departure at sentencing.").

Finally, the undersigned notes that (as he has done with respect to the first objection) Slowden has acknowledged that "current precedent does not appear to support dismissal of this cause on either of these two grounds" – sentencing entrapment or sentencing manipulation. Second Motion at 2 n.3 (DE 76). Slowden, however, asks this Court to create an exception to this precedent. And he informs the Court that he has raised these two issues "to preserve them for appellate review, if necessary, and to be able to advance a good-faith argument for a modification of current precedent." Id. Again, the undersigned is bound to faithfully apply the law of this Circuit and does not find any basis for excepting Slowden from the application of that law.

IV. CONCLUSION

As a matter of law in this Circuit, Defendant Slowden cannot establish a due process violation based upon the nature of the reverse sting outlined in his Motion, let alone upon an alleged violation of a task force Mission Statement. Nor, as a matter of law in this

Circuit, can Defendant Slowden assert a viable sentencing entrapment defense. And although this Circuit does recognize the viability of a sentencing manipulation defense, it does not do so where Government agents or informants suggest the quantity of narcotics to be stolen, as (Slowden concedes) occurred in this case. Accordingly, the undersigned respectfully RECOMMENDS that Defendant Cassio Slowden's Motion to Dismiss Indictment (DE 59), Corrected Motion to Dismiss Indictment (DE 60), and Second Motion to Dismiss Indictment (DE 76) be DENIED.

The parties will have seven (7) days[7] from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28. U.S.C. § 636(b)(1); Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982)

---

[7] Rule 4 of the Magistrate Judge Rules, Local Rules for the Southern District of Florida, requires that a party file any objections to a magistrate judge's report and recommendation with fourteen days of being served "or within such other time as may be allowed by the Magistrate Judge or District Judge." S.D. Fla. L. R. (Magistrate Judge Rule 4). Where exigencies exist, a court may shorten the time for filing objections. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate's report and recommendation where exigencies existed, stating that the [then-applicable] "[t]en days is a maximum, not a minimum"); Hispanic Counseling Center, Inc. v. Incorporated Village of Hempstead, 237 F. Supp. 2d 284, 290 (E.D.N.Y. 2002) (court may shorten time period for filing objections where exigencies exist). Exigencies exist in this case. The District Court had previously continued Defendant's trial date, re-setting his calendar call to February 29, 2012, and his trial to March 5, 2012, and stating that it will not consider any further motions to continue. See Order Granting Continuance of Trial Date (DE 54).

(en banc).

DONE and SUBMITTED at Fort Lauderdale, Florida this 16th day of February 2012.

*/s/ Barry Seltzer*
BARRY S. SELTZER
United States Magistrate Judge

Copies furnished to:

Honorable James I. Cohn
United States District Judge

All counsel of record